IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NICHOLAS LACKEY, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | No. 3:17-CV-2345-B (BT) |
| § | |
| ABEL SALAZAR and § | |
| AUSTIN PALMER, § | |
| § | |
| Defendants. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is a Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c), filed by Defendants Abel Salazar and Austin Palmer in this civil rights lawsuit brought by Plaintiff Nicholas Lackey under 42 U.S.C. § 1983. For the reasons stated, the District Court should DENY Defendants' Motion [ECF No. 16].

BACKGROUND

Plaintiff filed an Original Complaint alleging that Defendants violated his constitutional right to be free of unreasonable and excessive force, when they broke his neck and caused nerve damage to his wrist during an arrest on September 22, 2015. Defendants answered, asserted the defense of qualified immunity, and filed a motion requesting a Rule 7(a) reply. The Court granted Defendants' motion, and ordered Plaintiff to allege additional facts regarding his

1

own conduct so that the Court could better ascertain whether Defendants are entitled to qualified immunity. Plaintiff timely filed his Rule 7(a) reply.

By his complaint and Rule 7(a) reply, Plaintiff alleges he was pulled over by Defendants for a minor traffic offense on September 22, 2015. Plaintiff admits that he did not immediately comply with Defendant Salazar's instruction to step out of the car. Instead, Plaintiff asked the officer why he had to get out of his car. According to Plaintiff, Defendant Salazar did not give him a reason, but aggressively raised his voice and repeated his order for Plaintiff to get out of the car. Plaintiff claims that, during this part of the encounter, he kept his car in "Park" and did not take any action that indicated an intent to flee. Plaintiff alleges that Defendant Salazar reached into the car, opened the door, and tried to pull Plaintiff from the car. Plaintiff resisted Defendant Salazar's attempts to remove him from the car. Plaintiff clung to the steering wheel and yelled that he had done "nothing wrong" and he was just a college student going to class. Defendants Salazar and Palmer continued to pull on Plaintiff, but Plaintiff maintained his grip on the steering wheel and continued to assert that he had done nothing wrong and could not be arrested without a reason.

Plaintiff alleges that, despite his protests, Defendants never attempted to verbally address the situation. Instead, Defendants Salazar and Palmer placed Plaintiff in a chokehold, twisting and squeezing his neck, and attempted to forcibly remove him from the car. Defendants allegedly hit Plaintiff's head against the steering wheel or dashboard, grabbed and pulled Plaintiff's hair, and

dug their knees into Plaintiff's back and neck. Plaintiff alleges Defendants excessively beat him for seven and a half minutes. During this time, Plaintiff continued to try to hold on to the steering wheel and other items in the car in an attempt to remain in the car. He never attempted to hit or strike the officers. Defendants eventually placed Plaintiff in handcuffs, but they allegedly continued to strike Plaintiff, even after they had him in handcuffs. Plaintiff alleges that he did not resist once he was in handcuffs.

 Defendants allegedly pulled Plaintiff out of the car and walked him to their car. As they walked, each officer held one of Plaintiff's handcuffed arms. When they reached the police car, Defendants allegedly shoved Plaintiff, hands still cuffed behind him, on to the hood of the police car. Plaintiff alleges that his head hit the hood first, and he screamed in pain, but he did not punch, kick, or take any action in response to Defendants' conduct. Plaintiff further alleges that Defendants tightened the handcuffs in a manner that caused him pain.

 Plaintiff alleges that Defendants' use of force was excessive force, and that as a result of their use of excessive force he suffered a broken neck at the C7 vertebra, cervical faucet syndrome, a sprain/strain of the cervical spine, a head contusion, neuraproxia and nerve damage to his wrists. Plaintiff alleges that he suffered severe, serious, and permanent physical injuries and attendant pain, suffering, and inconvenience, as well as substantial medical expenses and lost time from school and work resulting in lost income, lost opportunities at work, and other associated damages.

Defendants filed their Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) arguing that Plaintiff's excessive force action should be dismissed, because Plaintiff failed to plead facts sufficient to establish: (1) excessive force or to overcome Defendants' entitlement to qualified immunity for the officer's use of force in handcuffing and restraining Plaintiff; and (2) an injury that resulted only and directly from Defendants' use of excessive force after he was handcuffed and restrained. In the alternative, Defendants argue Plaintiff failed to allege facts regarding each of the Defendant's specific use of force, sufficient to overcome each of the Defendant's entitlement to qualified immunity. *See* Defs.' Mot. 9-22 [ECF No. 16]. In response, Plaintiff argues: (1) Defendants' use of force to pull Plaintiff out of his vehicle was objectively unreasonable; (2) Defendants' conduct in slamming Plaintiff onto the hood of the police car while he was restrained was objectively unreasonable; and (3) Defendants are not entitled to qualified immunity, because it was clearly established at the time of the arrest, that the amount of force used was unlawful. *See* Resp. 5-7 [ECF No. 19]. This matter is now fully briefed and ripe for adjudication.

STANDARDS OF REVIEW

Rule 12(c)

"A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Johnson-Williams v. CitiMortgage, Inc.*, 2018 WL 1156100, at *6 (N.D.

Tex. Jan. 31, 2018) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2012); *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)) (internal quotation marks omitted). "The standard for deciding a motion under Rule 12(c) is the same as the one for deciding a motion to dismiss under Rule 12(b)(6)." *Johnson-Williams*, 2018 WL 1156100, at *6 (citing *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007); *Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 (N.D. Tex. Aug. 15, 2011); *Gentilello v. Rege*, 627 F.3d 540, 543-44 (5th Cir. 2010)).

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show [n]' — 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210 (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Hughes v. Tobacco Institute, Inc.*, 278 F.3d 417, 420 (5th Cir. 2001)). However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). In addition, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555. "While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

<u>Section 1983</u>

"Section 1983 provides a private right of action against parties acting under color of any statute, ordinance, regulation, custom, or usage, of any State to redress the deprivation of rights secured by the United States Constitution or federal law." *Mercado v. Dallas Cty., Tex.*, 229 F. Supp. 3d 501, 509 (N.D. Tex. 2017) (quoting *Bauer v. Texas*, 341 F.3d 352, 357 (5th Cir. 2003); citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)) (internal quotation marks omitted). "'Section 1983 is not itself a source of substantive rights; it merely provides a method for vindicating already conferred federal rights.'" *Id.* (quoting *Bauer*, 341 F.3d at 357; citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). "To prevail on a § 1983 claim, plaintiffs 'must show that: 1) the offending conduct was

6

committed by a person acting under color of state law; and 2) the conduct deprived the plaintiff of rights secured by the Constitution or federal law.'" *Id.* (quoting *Bauer*, 341 F.3d at 357; citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)).

### Fourth Amendment

> A plaintiff's claim for excessive force must be determined according to Fourth Amendment standards because "all claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]"

*Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 2018 WL 1305455, at *23 (N.D. Tex. Mar. 13, 2018) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "[T]he Fifth Circuit uses a three-part test that requires a plaintiff to allege: '(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.'" *Mohamed*, 2018 WL 1305455, at *23 (*quoting Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018)); *see also Hatcher v. City of Grand Prairie*, 2014 WL 3893907, *4 (N.D. Tex. Aug. 6, 2014) (In order to "prevail on a Fourth Amendment excessive force claim in the context of an arrest or investigatory stop, a plaintiff must establish: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" (quoting T*arver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005))). In order to "state a claim for excessive

use of force, the plaintiff's asserted injury must be more than a de minimis injury." *Mohamed*, 2018 WL 1305455, at *23 (citing *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2005)).

> Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."

*Mohamed*, 2018 WL 1305455, at *23 (quoting *Graham*, 490 U.S. at 396). "The issue of reasonableness centers on whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances with which he is faced, without regard to the officer's underlying intent or motivation." *Mohamed*, 2018 WL 1305455, at *23 (quoting *Graham*, 490 U.S. at 397). In order to "gauge the objective reasonableness of the force, a court 'must balance the amount of force used against the need for force.'" *Hatcher*, 2014 WL 3893907, *4 (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008)). "The inquiry into reasonableness is fact-specific and 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Hatcher*, 2014 WL 3893907, at *4 (quoting *Graham*, 490 U.S. at 396-97).

### Qualified Immunity

"The doctrine of qualified immunity affords protection against individual liability for civil damages to officials 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

8

would have known.'" *Cornett v. Longois*, 871 F. Supp. 918, 924 (E.D. Tex. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The Supreme Court has explained that 'the contours of the right' allegedly violated 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Longois*, 871 F. Supp. at 924 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Moreover, the 'relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged actions.'" *Longois*, 871 F. Supp. at 924 (quoting *Poe v. Haydon*, 853 F.2d 418, 423-24 (6th Cir. 1988)). "Qualified immunity protects a police officer from liability if a reasonable competent law enforcement officer would not have known that his actions violated clearly established law." *Longois*, 871 F. Supp. at 924 (citing *Creighton*, 483 U.S. at 639).

ANALYSIS

Plaintiff alleges the following facts, which the Court must take accept as true for purposes of ruling on Defendants' Rule 12(c) motion: (1) Defendants stopped Plaintiff for "a minor traffic offense;" (2) when Defendants first approached Plaintiff, he did not attempt to flee, fight, or otherwise resist—he merely questioned why he had to get out of his car; (3) Defendants responded to Plaintiff's questions by attempting to forcibly remove Plaintiff from his car; (4) although Plaintiff resisted being pulled from his car, he never attempted to hit or strike Defendants; (5) after Plaintiff had been removed from his car, Defendants

9

placed him in handcuffs and then forcefully shoved Plaintiff's head onto the hood of a police car while Plaintiff was not resisting; and (6) Plaintiff sustained a broken neck at the C7 vertebra, cervical faucet syndrome, sprain/strain of the cervical spine, head contusion, neurapraxia, and nerve damage to the wrists from Defendants' use of force. Defendants argue these facts as alleged show that their actions in removing Plaintiff from the car, and handcuffing him, were not clearly excessive, nor clearly unreasonable from the perspective of a reasonable officer on the scene. In particular, Defendants argue their use of force in restraining and arresting Plaintiff was lawful because Plaintiff refused to get out of his car and resisted being handcuffed.

In evaluating whether the use of force was reasonable, courts look to the "totality of the circumstances," "giving 'careful consideration to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (citing *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012); quoting *Graham*, 490 U.S. at 396). Defendants contend that their use force was reasonable because Plaintiff did not immediately comply with their instructions to get out of the car and resisted arrest at a later point in their encounter. However, the Fifth Circuit has ruled that the use of force can be excessive or unreasonable where a police officer immediately resorts to force even though a suspect did not pose a threat to the

officer's safety and where a police officer employs force after a suspect has been subdued. *See Ramirez*, 716 F.3d at 378-79 (denying qualified immunity where officer used taser on subdued and handcuffed suspect, even where suspect had initially pulled away from officer's attempt to handcuff him); *see also Newman v. Guedry*, 703 F.3d 757, 762-63 (5th Cir. 2012) (denying qualified immunity where officers immediately resorted to nightstick and taser where suspect did not pose threat to officers' safety and did not resist officers or attempt to flee); *Bush*, 513 F.3d 492, 501-02 (2018) (denying qualified immunity where officer used excessive force that was objectively unreasonable and in violation of clearly established law when he forcefully slammed a suspect's face into a vehicle after subduing her and placing her in handcuffs).

Based on this precedent, and the *Graham* factors, the Court concludes that Plaintiff's allegations are sufficient to state a claim that Defendants used clearly excessive force that was unreasonable. The first factor is the "severity of the crime at issue[,]" *Graham*, 490 U.S. at 396, which in this case Plaintiff alleges was "a minor traffic offense." This factor thus weighs in favor of minimal force. *See Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (lower amount of force justified where plaintiff was stopped for speeding). The second factor is whether Plaintiff posed an immediate threat to the officers or others. *Graham*, 490 U.S. at 396. A reasonable officer could not have concluded that Plaintiff posed an immediate threat to the safety of Defendants, as he alleges that when Defendants first approached him, he was sitting in his car, which was in the "Park" position.

11

He did not attempt to flee, fight, or otherwise resist; he merely questioned why he had to get out of his car. Yet, Defendants immediately attempted to forcibly remove Plaintiff from his car, placing him in a chokehold and twisting and pulling his neck. Plaintiff further alleges that he was already handcuffed and not resisting Defendants when they slammed his head into the hood of the police car. The second factor therefore also weighs in favor of Plaintiff. As to the third factor—whether Plaintiff was "actively" resisting arrest or attempting to evade arrest by fleeing, *see Graham*, 490 U.S. at 396—taking all allegations in the pleadings as true, the Court finds that this factor weigh in favor of Plaintiff. According to the pleadings, Plaintiff initially only asked why he had to get out of his car. He did not attempt to flee, nor did he actively resist or engage in any threatening conduct. It was not until Defendants reached into his car and attempted to pull him out that Plaintiff began to struggle. The pleadings assert that Plaintiff never attempted to strike Defendants; rather his "resistance" consisted of clinging to the steering wheel and other objects in the car. According to the pleadings, Plaintiff did not resist after he was placed in handcuffs. Accepting the well-pleaded facts as true, as the Court must at this stage and after evaluating the *Graham* factors, the Court concludes that a reasonable officer would view Defendants' use of force as clearly excessive and unreasonable under the circumstances.

    Having found that there are sufficient allegations to support the violation of a constitutional right under the Fourth Amendment for excessive force, the

Court must determine whether, nevertheless, qualified immunity is appropriate because Defendants' actions were objectively reasonable "'in light of clearly established law at the time of the conduct in question.'" *See Hampton Co. Nat'l Sur., LLC v. Tunica Cty., Miss.*, 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)). Defendants argue their conduct was not objectively unreasonable under clearly established law. They contend the law imposes no duty on them to "negotiate" a suspect's arrest and permits the use of force when a suspect resists arrest, even passively. However, the Fifth Circuit has recently affirmed that the law is clearly established that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation. *See Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (holding that where an individual stopped for a minor traffic offense offers, at most, passive resistance and presents no threat or flight risk, abrupt application of physical force rather than continued verbal negotiating is clearly unreasonable and excessive); *Deville*, 567 F.3d at 167-69 (same). *See also Doss v. Helpenstell*, 626 F. App'x 453, 459-60 (5th Cir. 2015) (construing *Deville* as clearly establishing that an officer should receive no qualified immunity if he "quickly escalate[s]" an encounter with a non-threatening, passively-resisting driver who posed little risk of escape by employing overwhelming force "rather than continu[ing] to negotiate"). The

13

Court finds unavailing Defendants' attempts to distinguish *Deville* on the issue of whether probable cause existed for the stop. Whether an officer is entitled to qualified immunity for the use of force is a fact intensive inquiry. In *Deville*, the minor nature of the offense and the extent of the plaintiff's passive resistance were more important to the use of force analysis than whether there was probable cause for the stop.

     Defendants also argue Plaintiff fails to allege sufficient facts to establish an injury that resulted only and directly from their use of force after he was handcuffed and restrained. The Court disagrees. Plaintiff alleges Defendants slammed his head into the hood of a police cruiser after he was in handcuffs. He further alleges that he suffered a broken neck and a head contusion. The facts are sufficient to reasonably infer that Plaintiff's injuries resulted from Defendants' use of force. Plaintiff's allegations regarding his head and neck injuries are sufficient to constitute a significant injury for purposes of Plaintiff's Fourth Amendment excessive force claim.  *Cf. Longois*, 871 F. Supp. at 924 ("Plaintiff alleges he was hit in the face with a service revolver without provocation. Plaintiff alleges he received a severe bruise as a result of the blow. The allegation of severe bruising is sufficient to assert significant injury . . . . Plaintiff's allegations assert a Fourth Amendment excessive force claim. Officer Breashers is not entitled to qualified immunity in regards to the excessive force claim." (citing *Hay v. Irving*, 893 F.2d 796, 798 (5th Cir. 1990))). The Court comes to the same conclusion with respect to Plaintiff's allegations that Defendants' use of force caused "neurapraxia

and nerve damage" to his wrists. *See Deville*, 567 F.3d at 168 (reversing dismissal of excessive force claim, where handcuffs were applied so tightly that plaintiff sustained long-term nerve damage to her wrists).

In the context of the present motion, the Court does not have the benefit of a summary judgment record where evidence has been developed regarding the events at issue. Instead, the Court is ruling on a motion to dismiss where all allegations must be taken as true. "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville*, 567 F.3d at 167 (quoting Graham, 490 U.S. at 396). That Defendants are not entitled to qualified immunity at this juncture does not preclude the Court from re-visiting the issue later in the case.

Finally, the Court rejects Defendants' "technical" argument that Plaintiff's allegations are insufficient to overcome each officer's individual entitlement to qualified immunity. Plaintiff has named only two officers as Defendants. His pleadings sufficiently identify specific conduct by each officer. For example, Plaintiff alleges that it was Defendant Salazar who first reached into his car, opened the door, and attempted to forcibly remove Plaintiff from the car. *See* Resp. 2, ¶ 7 [ECF No. 15]. Plaintiff also alleges that both Defendants engaged in the same conduct, or acted together, to deprive him of his civil rights. Specifically, Plaintiff alleges:

> Defendants Salazar and Palmer went inside the vehicle and placed Mr. Lackey in a chokehold, twisting and squeezing his neck. The Defendants also hit Mr. Lackey's head against the steering wheel or dashboard, grabbed and pulled his hair, dug their knees on Mr. Lackey's back and neck, and continued to strike and hurt him, even after they had placed him in handcuffs. Defendant Salazar and Palmer's excessive beating of Mr. Lackey continued for seven and a half minutes until they were able to pull Mr. Lackey out of his vehicle.

*Id.* 3, ¶ 9. Plaintiff also alleges:

> [T]he officers pulled Mr. Lackey out of the car. They then walked him to their car, approximately two car lengths. As they walked him, each officer held one of Mr. Lackey's handcuffed arms. Mr. Lackey offered no resistance to this.
>
> Then, Defendants shoved a handcuffed Mr. Lackey onto the hood of Defendant Salazar's police vehicle, head first, making hard and forceful contact between Mr. Lackey's head and neck and the hood. Mr. Lackey screamed in pain. He did not punch, kick, scream, or do anything in response to this.

*Id.* ¶¶ 11, 12. As alleged, Plaintiff's claims arise from conduct in which both of the individual Defendants were said to have participated. Thus, it is not necessary, at the pleading stage, for Plaintiff to establish which officer delivered which blows. *Davis v. City of Port Aransas, Tex.*, 2015 WL 758278, at *8 (S.D. Tex. Feb. 23, 2015). These are matters that can be developed in discovery. Plaintiff's allegations provide adequate notice of his claims and are sufficient to survive dismissal on the pleadings.

In sum, Defendants' Motion for Judgment on the Pleadings should be denied, because Plaintiff has, under the standard which requires the Court to

16

accept the alleged facts as true, sufficiently alleged that Defendants used objectively unreasonable force that violated clearly established law of which a reasonable officer would have known at the time of Plaintiff's arrest.

## RECOMMENDATION

The District Court should DENY Defendants' Motion for Judgment on the Pleadings.

July 17, 2018.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).