IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| NICHOLAS LACKEY,<br><br>    Plaintiff,<br><br>v.<br><br>ABEL SALAZAR and<br>AUSTIN PALMER,<br><br>    Defendants. | No. 3:17-cv-2345-B-BT |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

    Plaintiff Nicholas Lackey sued Defendants Abel Salazar and Austin Palmer under 42 U.S.C. § 1983 for allegedly violating his Fourth Amendment rights by using excessive force against him during a September 2015 traffic stop. Defendants filed a Motion for Summary Judgment (ECF No. 33), seeking dismissal of Lackey's claims on qualified-immunity grounds. Because the evidence in the record does not raise a genuine issue of material fact regarding the use of excessive force, the Court should GRANT Defendants' Motion.

**Background**

    On September 22, 2015, Dallas County Sheriff's Department Deputy Salazar stopped Lackey for driving a car with an expired paper license plate. Pl.'s Ex. 1 at 2 ¶¶ 2-3 (ECF No. 49-1). According to Lackey, Salazar approached Lackey's car and asked Lackey for his driver's license. *Id.* ¶ 3. Lackey handed it to him, and Salazar

1

returned to his patrol car. *Id.* ¶¶ 3-4. After seven to eight minutes, Salazar returned to Lackey's car. *Id.* ¶¶ 5-6. Dallas County Sheriff's Department Deputy Palmer accompanied Salazar. *Id.* ¶ 6.

Salazar told Lackey to get out of the car. *Id.* 2-3 ¶ 8. Lackey asked why, but Salazar did not answer. *Id.* 3 ¶ 11. Instead, Salazar repeated his order to Lackey several times. *Id.* ¶¶ 9-10. When Lackey did not get out of the car, Salazar reached through the open driver's-side window, opened the door, and, with Palmer's help, tried to physically remove Lackey from the car. *Id.* ¶ 14. Lackey resisted their efforts, held onto the steering wheel, and yelled for help from passing motorists. *Id.* 4 ¶ 22. Lackey insists, however, that he never tried to hit or strike Defendants. *Id.* ¶ 19.

Lackey avers that Salazar and Palmer placed him in a chokehold, twisted and squeezed his neck, grabbed and pulled his hair, dug their knees into his back and neck, and attempted to cover his mouth to stop him from screaming. *Id.* ¶ 17. He claims that Defendants continued to strike and hurt him, even after they placed him in handcuffs. *Id.* ¶ 18. Lackey further claims that Defendants banged his head against the steering wheel and slammed him face first onto the hood of their patrol car, all while he was handcuffed. *Id.* ¶¶ 18, 20. He also asserts that Defendants tightened the handcuffs too tight on his wrists. *Id.* ¶ 22. Lackey alleges that as a result of the force Salazar and Palmer used against him, he suffered a broken neck at the C7 vertebra and neuropraxia and nerve damage to his wrists. *Id.* ¶ 23. Based

on these facts, Lackey brings an excessive-force claim against Defendants under 42 U.S.C. § 1983 for violation of his Fourth Amendment rights.

Defendants move for summary judgment on grounds that (1) the evidence does not raise a genuine issue of material fact regarding the use of excessive force, and (2) even if Lackey were able to establish a violation of his Fourth Amendment rights, he cannot establish that Defendants' conduct was objectively unreasonable in light of clearly established law at the time the relevant conduct occurred. Defs.' Br. 16, 30 (ECF No. 34). After several requests for an extension of time, Lackey filed a response to Defendants' Motion. Mots. Ext. (ECF No. 39, 43, 45); Pl.'s Resp. (ECF No. 49). Defendants filed a reply, and the Motion is ripe for determination. Defs.' Reply (ECF No. 50).

## Legal Standard

When a plaintiff cannot prove the necessary facts essential to recovery, summary judgment is proper. Fed. R. Civ. P. 56. Ordinary summary judgment under the Federal Rules is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists when a trier of fact could resolve the dispute in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Michalik v. Hermann,* 422 F.3d 252, 262 (5th Cir. 2005)). Once a defendant raises qualified immunity, "the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam) (citing *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 489 (5th Cir. 2001)); *accord Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) ("Once the defendant raises the qualified immunity defense, 'the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008))). "Despite this burden-shifting, all reasonable inferences must be drawn in the non-movant plaintiff's favor." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (citing *Brown*, 623 F.3d at 253).

Nevertheless, a plaintiff's burden at summary judgment "'to rebut a claim of qualified immunity once the defendant has properly raised it in good faith' . . . 'is a demanding [one].'" *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (first quoting *Cole v. Carson*, 802 F.3d 752, 757 (5th Cir. 2015); then *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015)). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam) (internal

quotation marks omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)); *accord City & Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015).

A court reviews a motion for summary judgment based on qualified immunity in two steps. "First: 'Taken in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right[.]'" *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Second, [the court] ask[s] 'whether the right in question was 'clearly established' at the time of the violation.'" *Id.* (quoting *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014))*; see also Garza v. Briones*, 943 F.3d 740, 744 (5th Cir. 2019) ("Government officials 'are entitled to qualified immunity . . . unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time.'") (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018)).

**Analysis**

In Lackey's Complaint, he alleges that Defendants Salazar and Palmer used excessive force that was "not reasonable in light of the circumstances facing the officer[s]." Compl. 5 (ECF No. 1). Specifically, Lackey contends it was unreasonable for:

> (1) Defendant Salazar to refuse to provide [him] a reason why he was asking him to step out of the vehicle;
>
> (2) Defendants Salazar and Palmer to decide to remove [him] from his vehicle by excessive force;

5

>(3) Defendant Salazar and Defendant Palmer to place [him] in a chokehold, twisting and squeezing his neck;
>
>(4) Defendants Salazar and Palmer to hit [his] head against the steering wheel or dashboard, grab and pull his hair, and dig their knees on [sic] [his] back and neck;
>
>(5) Defendants Salazar and Palmer to continue to strike and hurt Mr. Palmer [sic],[1] even after they had placed him in handcuffs[;]
>
>(6) Defendants Salazar and Palmer to physically abuse [him] for seven and a half minutes until they were able to pull [him] out of his vehicle[; and]
>
>(7) Defendants Salazar and Palmer to shove [him] handcuffed . . . onto the hood of Defendant Salazar's police vehicle, head first, making hard and forceful contact between [his] head and neck and the hood.

*Id.*

Lackey argues that as a result of Defendants' allegedly unreasonable use of force, they violated his "rights under the Fourth and Fourteenth Amendments to the United States Constitution." *Id.* 5-6. Lackey's Complaint, however, includes only one enumerated claim, "Count 1: [Lackey's] Civil Rights Claim for Use of Excessive and Unnecessary Force Against Defendants Salazar and Palmer Under 42 U.S.C. § 1983," and does not assert a separate claim under the Fourteenth Amendment. *Id.* 4. For that reason, and per the United States Supreme Court's instruction, the Court analyzes Lackey's claim only under the Fourth Amendment.

---

[1] The Court presumes Lackey meant to allege, "Defendants Salazar and Palmer to continue to strike and hurt [*Mr. Lackey*], even after they had placed him in handcuffs." Compl. 5.

6

*See Graham v. Connor*, 490 U.S. 386, 388 (1989) ("[Claims that an officer used excessive force during a stop or arrest] are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard.").

"[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham*, 490 U.S. at 388. "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396 (citing *Terry v. Ohio,* 392 U.S. 1, 22-27 (1968)). The amount of force that is reasonable under the Fourth Amendment "'is not capable of precise definition or mechanical application,'" and "requires careful attention to the facts and circumstances of each particular case." *Id.* (quoting *Bell v. Wolfish,* 441 U.S. 520, 559 (1979)).

To bring an excessive force claim, a plaintiff must establish "'(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable.'" *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)). "To gauge the objective reasonableness of the force used by a law enforcement officer," a court "must balance the amount of force used against the need for force, paying careful attention to the facts and circumstances of each particular case." *Ramirez v. Knoulton*, 542 F.3d 124, 129

7

(5th Cir. 2008) (internal quotation marks omitted) (quoting *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004)). Specifically, the Fourth Amendment's case-specific balancing exercise involves considering "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest." *Hill v. Carroll Cty.*, 587 F.3d 230, 234 (5th Cir. 2009) (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396). Even the "[u]se of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others." *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003) (citing *Tennessee v. Garner,* 471 U.S. 1 (1985)). The reasonableness inquiry, however, is fact-specific and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"; this allows for the fact that "police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97 (citations omitted).

After reviewing the summary-judgment evidence, the Court finds that no fact issue exists as to whether Defendants' use of force was objectively reasonable under the circumstances and commensurate to the need. The undisputed evidence, which includes affidavits from the parties as well as dashcam video from Salazar's

patrol car,[2] establishes that Salazar stopped Lackey because he was operating a vehicle with an expired paper license plate—a relatively minor offense. Defs.' App. 5 ¶ 2 (ECF No. 35); Pl.'s Ex. 1 at 2 ¶ 3. After Salazar obtained Lackey's driver's license, he ran a computer search of the Texas and National Crime Information Center databases, which showed Lackey's driver's license was suspended. Defs.' App. 6 ¶ 7. Salazar also searched those databases for the vehicle's registration and discovered that "the insurance inquiry was unconfirmed," or "no vehicle coverage [was] found." *Id*. Because Lackey's license was suspended, and he did not have car insurance, Salazar could not permit Lackey to drive his vehicle away from the scene in violation of Texas law, so he called for backup and a wrecker to tow Lackey's car. *Id*. ¶¶ 9-10.

Shortly thereafter, Palmer arrived, and both officers approached Lackey's car. *Id*. ¶ 10; *see also* Salazar Video 15:53:49 (ECF No. 38). Salazar went to the driver's-side door and ordered Lackey to get out of his car. Defs.' App. 6 ¶ 11; Salazar Video 15:53:51. Lackey did not comply; instead, Lackey questioned why he was being told to get out of the car. Defs.' App. 6 ¶¶ 11-12. Salazar did not answer Lackey's question but told him four more times to get out of the car. Defs.' App. 6 ¶ 11; Salazar Video 15:53:54-15:54:09. Still, Lackey did not budge.

Lackey disputes that he failed to comply with Salazar's order to get out of the car. In his summary-judgment response, he argues that "[n]owhere in the video

---

[2] The video is available at: https://drive.google.com/open?id=0B6-IT4lupeLKMGpvVDhOblpwa1E.

did [ ] Lackey indicate he would not step out of the car." Pl.'s Resp. at 10. But this argument is directly contrary to the video, which shows Lackey never gave any indication that he *would* comply. Rather, Lackey only responded to Salazar's command by challenging Salazar's authority to order him out of the car. Salazar Video 15:53:54-15:54:09. Although the Court "review[s] evidence in the light most favorable to the nonmoving party, [it] assign[s] greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris,* 550 U.S. 372, 381 (2007)). The Court "need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider 'the facts in the light depicted by the videotape.'" *Id.* (quoting *Scott,* 550 U.S. at 381); *see also Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) ("However, [*Scott v. Harris*] instructs that a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is blatantly contradicted and utterly discredited by video recordings." (internal quotation marks omitted) (citing *Curran v. Aleshire*, 800 F.3d 656, 664 (5th Cir. 2015)). Lackey insists that he was not resisting Salazar's command because he only asked for an explanation why he was being told to get out of his car and did not attempt to flee or fight at this point. Lackey, however, was not entitled to an explanation. Indeed, "[w]hile it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody," it is not "constitutionally required." *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004) (Scalia, J.); *see also*

10

*O'Dwyer v. Nelson*, 310 F. App'x. 741, 746 (5th Cir. 2009) (per curiam) (citing *Devenpeck*, 543 U.S. at 155) ("The Fourth Amendment contains no requirement that an arresting officer advise the arrestee of the reason for his arrest.").

When it became apparent that Lackey was not going to get out of the car, Salazar reached inside the driver's-side door's open window, pulled the handle to open the door, and Salazar and Palmer tried to pull Lackey out of the car. Salazar Video 15:54:09; Defs.' App. 6 ¶ 11, 7 ¶¶ 13-14; Pl.'s Ex. 1 at 3 ¶ 14. Lackey resisted and "tried to stay in the car by holding onto the door and steering wheel, and yelling [he] had done nothing wrong." Salazar Video 15:54:09-15:55:00; Pl.'s Ex. 1 at 3 ¶ 16; Defs.' App. 7 ¶ 14. Palmer and Salazar lifted Lackey partially out of the car and warned him that "he was about to be arrested for resisting arrest." Salazar Video 15:54:40-15:54:54; Defs.' App. 7 ¶ 16. But Lackey continued to resist the officers; he pulled away and slipped back into the car. Salazar Video 15:55:00; Defs.' App. 7 ¶ 16. Lackey contends Defendants' use of force here was excessive. But the evidence shows that Lackey was resisting arrest at the time the initial force was used, and "using force . . . to gain control of a non-compliant suspect is not clearly excessive." *Escarcega v. Jordan*, 701 F. App'x 338, 342 (5th Cir. 2017) (per curiam) (citing *Griggs v. Brewer*, 841 F.3d 308, 316 (5th Cir. 2016)). Contrary to Lackey's argument, it was not Defendants who escalated the traffic stop into a physical altercation; rather, it was Lackey who refused commands to get out of his car and pulled away when Defendants initially attempted to extract him from the car.

11

After Lackey slipped back into the car, Salazar and Palmer followed him into the vehicle and "struggled in the close confines of the vehicle trying to restrain and handcuff Mr. Lackey." Defs.' App. 8 ¶ 21. Defendants had not yet searched the car and had no idea whether Lackey had a firearm or any other weapons stashed in his car. Although Lackey submitted a declaration stating he "never had a weapon at any time during this incident," Pl.'s Supp. Decl. 1 ¶ 2 (ECF No. 52-2), that fact was not known to Defendants.[3] There is no evidence that Lackey ever informed Defendants he was not armed.

"After struggling in the close confines of the car with Mr. Lackey for over four minutes, [they] were able to get [him] lying face-down in the vehicle . . . [to] handcuff him." *Id.* ¶ 22. Hernandez assisted Salazar and Palmer in removing Lackey from the vehicle. *Id.* ¶ 23. Salazar and Palmer then placed Lackey's "chest against the front of [the] squad car, with [their] hands on his shoulders," while the other officers searched Lackey. *Id.* 8 ¶ 23, 12 ¶ 15.

Lackey contends that when Salazar and Palmer "went inside [his] car," they "placed [him] in a chokehold . . . [and] twisted and squeezed [his] neck." Pl.'s Ex. 1 at 4 ¶ 17. He also asserts Salazar and Palmer "grabbed and pulled [his] hair," "dug theirs [sic] knees in [his] back and neck," and "attempted to cover [his] mouth to stop [him] from screaming/alerting other motorists." *Id.* Lackey states Salazar and

---

[3] The Court granted Lackey's Motion to Supplement the Summary-Judgment Record (ECF No. 52) with, among other things, a new declaration, which includes the statement that he did not have a weapon at the time of the incident.

12

Palmer "banged [his] head against the steering wheel" and, while he was in handcuffs, "slammed [him] onto the hood of their car face first." *Id.* ¶¶ 18, 20.

     Salazar's dashcam video confirms that the parties engaged in a protracted struggle. And although it is difficult to make out from the video which legs and arms belong to which actors, it is clear that Defendants used force only in response to Lackey's resistance. Lackey pulled away from Defendants' grip, writhed and wriggled on the seat, and yelled at passing motorists to videotape the incident. At one point, Palmer asked Lackey for his hands to which Lackey responded "no, bro." Salazar Video 15:56:34-15:56:40. Ultimately, it took both officers several minutes to subdue Lackey. The video also shows the officers placing Lackey on the hood of the car to search his person after he is in handcuffs and out of his car. *Id.* 16:01:26. Specifically, it shows Lackey dragging his feet as the officers walked him to the squad car and placed him on the front of it with his hands behind his back, while other officers searched him. *Id.* The officers set Lackey down on the car with some force, and his head appeared to contact the car. *Id.* However, Defendants did not have their hands on Lackey's head and did not purposefully "slam his face" into the car's hood. Also, Lackey continued to struggle while the officers searched him such that one officer exclaimed, "Stop kicking, dude!" *Id.* 16:01:45. To restrain him during the search, Palmer utilized a "handcuff shoulder hold—an approved restraint technique—on [Lackey], who continue[d] to struggle." Defs.' Br. 21; *see also* Defs.' App. 12 ¶ 15; Salazar Video 16:01:26-16:02:15.

13

As previously mentioned, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396 (citing *Terry,* 392 U.S. at 22-27). Under the circumstances here, the Court finds there is no genuine issue as to whether Defendants' use of force was objectively reasonable and commensurate to the situation's need, even though Defendants only stopped Lackey for a traffic violation. *See Hill*, 587 F.3d at 234 (quoting *Graham*, 490 U.S. at 396) (instructing courts to consider "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest'" to determine whether an officer's use of force is objectively reasonable). After Lackey failed to comply with Salazar's orders to get out of the car and resisted Defendants' attempt to physically remove him, a reasonable officer in the Defendants' position, not knowing whether Lackey had a weapon in his vehicle, would have reason to believe that Lackey posed a threat of serious bodily harm to the officers or others, since the incident took place on a busy highway service road. Defs.' App. 5 ¶ 3 ("The vehicle exited the highway and stopped on the north-bound service road of Stemmons Freeway (Interstate 35 North), before the traffic light at Continental Avenue."). Salazar and Palmer, therefore, used the physical force necessary to extract Lackey from the vehicle. The evidence establishes the amount of force Defendants used was appropriate for the situation. Lackey actively resisted throughout the encounter with law enforcement, even

after he was in handcuffs, and Defendants used only their bare hands to effect the arrest. They did not brandish any weapon, nor did they mace or tase Lackey. Accordingly, because no fact issue exists as to whether Defendants' use of force was objectively reasonable and commensurate to the situation's need, Defendants are entitled to summary judgment on Lackey's Fourth Amendment excessive-force claim.

## **RECOMMENDATION**

For the reasons stated, the District Court should GRANT Defendants' Motion for Summary Judgment (ECF No. 33) and DISMISS WITH PREJUDICE Plaintiff Nicholas Lackey's claims against them.

**SO RECOMMENDED**.

February 18, 2020.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).